**Fuller Sotheby's International Realty**
**32156 Castle Court**
**Suite 201**
**Evergreen, CO 80439**

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09) (Mandatory 7-09)

**THIS IS A BINDING CONTRACT. THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

Compensation charged by real estate brokerage firms is not set by law. Such charges are established by each real estate brokerage firm.

DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE BUYER AGENCY, SELLER AGENCY OR TRANSACTION-BROKERAGE.

# EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT

☒ **SELLER AGENCY**    ☐ **TRANSACTION-BROKERAGE**

Date: **December 13, 2010**

1. **AGREEMENT.** Seller and Brokerage Firm enter into this exclusive, irrevocable contract (Seller Listing Contract) as of the date set forth above.

2. **BROKER AND BROKERAGE FIRM.**
   ☒ 2.1. **Multiple-Person Firm.** If this box is checked, the individual designated by Brokerage Firm to serve as the broker of Seller and to perform the services for Seller required by this Seller Listing Contract is called Broker. If more than one individual is so designated, then references in this Seller Listing Contract to Broker shall include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm or to any other brokers employed or engaged by Brokerage Firm who are not so designated.
   ☐ 2.2. **One-Person Firm.** If this box is checked, Broker is a real estate brokerage firm with only one licensed natural person. References in this Seller Listing Contract to Broker or Brokerage Firm mean both the licensed natural person and brokerage firm who shall serve as the broker of Seller and perform the services for Seller required by this Seller Listing Contract.

3. **DEFINED TERMS.**

    3.1.   Seller:

    Cynthia Skeen, Chapter 7 Trustee for Bankruptcy Estate of James & Elizabeth Gordon, Case # 10-35966 MER

    3.2.   Brokerage Firm: **Fuller Sotheby's International Realty**

    3.3.   Broker: **The Endsley Team, Kerry and Sean Endsley**

    3.4.   **Property.** The Property is the following legally described real estate in the County of **Jefferson**, Colorado:
    **Parcel ID: 51-342-03-012, Lot 052A, section34, township 5, range 71, NW**

    known as No.
    **7737 Centaur Drive**             **Evergreen**              **CO 80439**
    Street Address                     City                       State    Zip
    together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

    3.5.   **Sale.**
        3.5.1.   A Sale is the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease. It also includes an agreement to transfer any

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFA$T® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realt
12/13/10 17:22:57
EXHIBIT A
Page 1 of 8
ır(s) _____

52 ownership interest in an entity which owns the Property.
53 ☐ **3.5.2.** If this box is checked, Seller authorizes Broker to negotiate leasing the Property. Lease of the Property or Lease
54 means any lease of an interest in the Property.
55 **3.6. Listing Period.** The Listing Period of this Seller Listing Contract shall begin on **December 15, 2010**, and
56 shall continue through the earlier of (1) completion of the Sale of the Property or (2) **December 31, 2011**. Broker shall
57 continue to assist in the completion of any transaction for which compensation is payable to Brokerage Firm under § 7 of this Seller
58 Listing Contract.
59 **3.7. Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation "N/A"
60 or the word "Deleted" means not applicable. The abbreviation "MEC" (mutual execution of this contract) means the latest date upon
61 which both parties have signed this Seller Listing Contract.
62 **3.8. Day; Computation of Period of Days, Deadline.**
63 **3.8.1. Day.** As used in this Seller Listing contract, the term "day" shall mean the entire day ending at 11:59 p.m., United
64 States Mountain Time (Standard or Daylight Savings as applicable).
65 **3.8.2. Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified,
66 the first day is excluded and the last day is included, e.g., three days after MEC. If any deadline falls on Saturday, Sunday
67 or federal or Colorado state holiday (Holiday), such deadline ☒ **Shall** ☐ **Shall Not** be extended to the next day not a
68 Saturday, Sunday or Holiday. Should neither box be checked, the deadline shall not be extended.
69
70 **4. BROKERAGE RELATIONSHIP.**
71 **4.1.** If the Seller Agency box at the top of page 1 is checked, Broker shall represent Seller as a Seller's limited agent (Seller's
72 Agent). If the Transaction-Brokerage box at the top of page 1 is checked, Broker shall act as a Transaction-Broker.
73 **4.2. In-Company Transaction - Different Brokers.** When Seller and buyer in a transaction are working with different brokers,
74 those brokers continue to conduct themselves consistent with the brokerage relationships they have established. Seller acknowledges
75 that Brokerage Firm is allowed to offer and pay compensation to brokers within Brokerage Firm working with a buyer.
76 **4.3. In-Company Transaction - One Broker.** If Seller and buyer are both working with the same broker, Broker shall function
77 as:
78 **4.3.1. Seller's Agent.** If the Seller Agency box at the top of page 1 is checked, the parties agree the following applies:
79 **4.3.1.1. Seller Agency Only.** Unless the box in § 4.3.1.2 (Seller Agency Unless Brokerage Relationship with
80 Both) is checked, Broker shall represent Seller as Seller's Agent and shall treat the buyer as a customer. A
81 customer is a party to a transaction with whom Broker has no brokerage relationship. Broker shall disclose to
82 such customer Broker's relationship with Seller.
83 ☒ **4.3.1.2. Seller Agency Unless Brokerage Relationship with Both.** If this box is checked, Broker shall
84 represent Seller as Seller's Agent and shall treat the buyer as a customer, unless Broker currently has or enters
85 into an agency or Transaction-Brokerage relationship with the buyer, in which case Broker shall act as a
86 Transaction-Broker.
87 **4.3.2. Transaction-Broker.** If the Transaction-Brokerage box at the top of page 1 is checked, or in the event neither box
88 is checked, Broker shall work with Seller as a Transaction-Broker. A Transaction-Broker shall perform the duties described
89 in § 5 and facilitate sales transactions without being an advocate or agent for either party. If Seller and buyer are working
90 with the same broker, Broker shall continue to function as a Transaction-Broker.
91
92 **5. BROKERAGE DUTIES.** Brokerage Firm, acting through Broker, as either a Transaction-Broker or a Seller's Agent, shall perform
93 the following **Uniform Duties** when working with Seller:
94 **5.1.** Broker shall exercise reasonable skill and care for Seller, including, but not limited to the following:
95 **5.1.1.** Performing the terms of any written or oral agreement with Seller;
96 **5.1.2.** Presenting all offers to and from Seller in a timely manner regardless of whether the Property is subject to a
97 contract for Sale;
98 **5.1.3.** Disclosing to Seller adverse material facts actually known by Broker;
99 **5.1.4.** Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters about
100 which Broker knows but the specifics of which are beyond the expertise of Broker;
101 **5.1.5.** Accounting in a timely manner for all money and property received; and
102 **5.1.6.** Keeping Seller fully informed regarding the transaction.
103 **5.2.** Broker shall not disclose the following information without the informed consent of Seller:
104 **5.2.1.** That Seller is willing to accept less than the asking price for the Property;
105 **5.2.2.** What the motivating factors are for Seller to sell the Property;
106 **5.2.3.** That Seller will agree to financing terms other than those offered;
107 **5.2.4.** Any material information about Seller unless disclosure is required by law or failure to disclose such information
108 would constitute fraud or dishonest dealing; or
109 **5.2.5.** Any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property.
110 **5.3.** Seller consents to Broker's disclosure of Seller's confidential information to the supervising broker or designee for the
111 purpose of proper supervision, provided such supervising broker or designee shall not further disclose such information without
112 consent of Seller, or use such information to the detriment of Seller.
113 **5.4.** Brokerage Firm may have agreements with other sellers to market and sell their property. Broker may show alternative
114 properties not owned by Seller to other prospective buyers and list competing properties for sale.

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFA$T® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 2 of 8
Seller(s) _____

115  5.5. Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a contract for
116  Sale.
117  5.6. Broker has no duty to conduct an independent inspection of the Property for the benefit of a buyer and has no duty to
118  independently verify the accuracy or completeness of statements made by Seller or independent inspectors. Broker has no duty to
119  conduct an independent investigation of a buyer's financial condition or to verify the accuracy or completeness of any statement made
120  by a buyer.
121  5.7. Seller understands that Seller shall not be liable for Broker's acts or omissions that have not been approved, directed, or
122  ratified by Seller.
123  5.8. When asked, Broker ☒ Shall ☐ Shall Not disclose to prospective buyers and cooperating brokers the existence of
124  offers on the Property and whether the offers were obtained by Broker, a broker within Brokerage firm or by another broker.
125
126  6. **ADDITIONAL DUTIES OF SELLER'S AGENT.** If the Seller Agency box at the top of page 1 is checked, Broker is a Seller's
127  Agent, with the following additional duties:
128  6.1. Promoting the interests of Seller with the utmost good faith, loyalty and fidelity.
129  6.2. Seeking a price and terms that are set forth in this Seller Listing Contract.
130  6.3. Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.
131
132  7. **COMPENSATION TO BROKERAGE FIRM; COMPENSATION TO COOPERATIVE BROKER.** Seller agrees that any
133  Brokerage Firm compensation that is conditioned upon the Sale of the Property shall be earned by Brokerage Firm as set forth herein
134  without any discount or allowance for any efforts made by Seller or by any other person in connection with the Sale of the Property.
135  7.1. Amount. In consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows:
136      7.1.1. Sale Commission. (1) __6__ % of the gross purchase price or (2) __n/a_____ , in U.S.
137      dollars.
138      7.1.2. Lease Commission. If the box in § 3.5.2. is checked, Brokerage Firm shall be paid a fee equal to (1)
139      __n/a__ % of the gross rent under the lease, or (2) __n/a_____ , in U.S. dollars, payable as follows:
140      __n/a_____ .
141  7.2. When Earned. Such commission shall be earned upon the occurrence of any of the following:
142      7.2.1. Any Sale of the Property within the Listing Period by Seller, by Broker or by any other person;
143      7.2.2. Broker finding a buyer who is ready, willing and able to complete the transaction as specified herein by Seller; or
144      7.2.3. Any Sale (or Lease if § 3.5.2. is checked) of the Property within __60_____ calendar days subsequent to
145      the expiration of the Listing Period (Holdover Period) to anyone with whom Broker negotiated and whose name was
146      submitted, in writing, to Seller by Broker during the Listing Period (including any extensions thereof). However, Seller
147      ☒ Shall ☐ Shall Not owe the commission to Brokerage Firm under this § 7.2.3 if a commission is earned by another
148      licensed real estate brokerage firm acting pursuant to an exclusive agreement entered into during the Holdover Period. If no
149      box is checked, above in this § 7.2.3 then **(Shall Not)** shall apply and Seller shall not owe the commission to Brokerage Firm.
150  7.3. When Applicable and Payable. The commission obligation shall apply to a Sale made during the Listing Period or any
151      extension of such original or extended term. The commission described in § 7.1.1 shall be payable at the time of the closing
152      of the Sale, or, if there is no closing (due to the refusal or neglect of Seller) then on the contracted date of closing, as
153      contemplated by § 7.2.1 or § 7.2.3, or upon fulfillment of § 7.2.2 where the offer made by such buyer is not accepted by
154      Seller.
155  7.4. Other Compensation.
156      **Seller will pay $250 admin fee to Fuller Sotheby's International Realty at closing**
157  7.5. Cooperative Broker Compensation. Broker shall seek assistance from, and Brokerage Firm offers compensation to,
158      outside brokerage firms, whose brokers are acting as:
159      ☒ Buyer Agents: __2.5__ % of the gross sales price or __n/a_____ , in U.S. dollars.
160      ☒ Transaction-Brokers: __2.5__ % of the gross sales price or __n/a_____ , in U.S. dollars.
161
162  8. **LIMITATION ON THIRD-PARTY COMPENSATION.** Neither Broker nor the Brokerage Firm, except as set forth in § 7, shall
163  accept compensation from any other person or entity in connection with the Property without the written consent of Seller. Additionally,
164  neither Broker nor Brokerage Firm shall assess or receive mark-ups or other compensation for services performed by any third party or
165  affiliated business entity unless Seller signs a separate written consent.
166
167  9. **OTHER BROKERS' ASSISTANCE, MULTIPLE LISTING SERVICE (MLS) AND MARKETING.** Seller has been advised
168  by Broker of the advantages and disadvantages of various marketing methods, including advertising and the use of MLS and various
169  methods of making the Property accessible by other brokerage firms (e.g., using lock boxes, by-appointment-only showings, etc.), and
170  whether some methods may limit the ability of another broker to show the Property. After having been so advised, Seller has chosen the
171  following (check all that apply):
172  9.1. MLS/Information Exchange.
173      9.1.1. The Property ☒ Shall ☐ Shall Not be submitted to one or more multiple listing services and ☒ Shall ☐ Shall
174      Not be submitted to one or more property information exchanges. If submitted, Seller authorizes Broker to provide timely
175      notice of any status change to such multiple listing services and information exchanges. Upon transfer of deed from Seller to

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFAST® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 3 of 8
Seller(s) _____

176 buyer, Seller authorizes Broker to provide sales information to such multiple listing services and information exchanges.
177     9.1.2.    Seller authorizes the use of electronic and all other marketing methods except:
178     **None**

179     9.1.3.    Seller further authorizes use of the data by MLS and property information exchanges, if any.
180     9.1.4.    The Property Address ☒ **Shall** ☐ **Shall Not** be displayed on the Internet.
181     9.1.5.    The Property Listing ☒ **Shall** ☐ **Shall Not** be displayed on the Internet.
182   **9.2.**  **Property Access.** Access to the Property may be by:
183     ☒ Lock Box
184     ☒ **Seller will provide home key and security alarm code, if any.**

185     Other instructions:
186     **Listing broker will be present for all showings. Showings will be by appointment with 24 hours notice when possible.**

187   **9.3.**  **Broker Marketing.** The following specific marketing tasks shall be performed by Broker:
188     **Listing broker to create the marketing plan**

189   **9.4.**  **Brokerage Services.** The Broker shall provide brokerage services to Seller.
190
191 **10. SELLER'S OBLIGATIONS TO BROKER; DISCLOSURES AND CONSENT.**
192   **10.1.**  **Negotiations and Communication.** Seller agrees to conduct all negotiations for the Sale of the Property only through
193 Broker, and to refer to Broker all communications received in any form from real estate brokers, prospective buyers, tenants or any
194 other source during the Listing Period of this Seller Listing Contract.
195   **10.2.**  **Advertising.** Seller agrees that any advertising of the Property by Seller (e.g., Internet, print and signage) shall first be
196 approved by Broker.
197   **10.3.**  **No Existing Listing Agreement.** Seller represents that Seller ☐ **Is** ☒ **Is Not** currently a party to any listing agreement
198 with any other broker to sell the Property.
199   **10.4.**  **Ownership of Materials and Consent.** Seller represents that all materials (including all photographs, renderings, images
200 or other creative items) supplied to Broker by or on behalf of Seller are owned by Seller, except as Seller has disclosed in writing to
201 Broker. Seller is authorized to and grants to Broker, Brokerage Firm and any multiple listing service (that Broker submits the
202 Property to) a nonexclusive irrevocable, royalty-free license to use such material for marketing of the Property, reporting as required
203 and the publishing, display and reproduction of such material, compilation and data. This license shall survive the termination of this
204 Seller Listing Contract.
205   **10.5.**  **Colorado Foreclosure Protection Act.** The Colorado Foreclosure Protection Act (Act) generally requires that (1) the
206 Property is residential, (2) any loan secured by the Property is at least thirty days delinquent or in default, (3) Buyer does not reside in
207 the Property for at least one year and (4) Buyer is subject to the Act. If all requirements 1, 2 and 3 are met and the Act otherwise
208 applies, then a contract between Buyer and Seller for the sale of the Property, that complies with the provisions of the Act is required.
209 Therefore, if the Act applies, Seller agrees, Broker is **not** authorized to prepare such a contract for the sale of the Property. It is
210 recommended that an attorney prepare the required documents.
211
212 **11. PRICE AND TERMS.** The following Price and Terms are acceptable to Seller:
213   **11.1.**  Price: U.S. $ __695,000__
214   **11.2.**  Terms: ☒ **Cash**    ☒ **Conventional**    ☐ **FHA**    ☐ **VA**
215     ☐ Other:
216     __n/a__
217   **11.3.**  **Loan Discount Points.**
218     **None**

219   **11.4.**  **Buyer's Closing Costs (FHA/VA).** Seller shall pay closing costs and fees, not to exceed $ __0__ , that
220 Buyer is not allowed by law to pay, for tax service and
221   **None**

222   **11.5.**  **Earnest Money.** Minimum amount of earnest money deposit U.S. $ __20,000__
223 in the form of **Personal or business check, or good funds wired to title comapany** .
224   **11.6.**  **Seller Proceeds.** Seller will receive net proceeds of closing as indicated: ☐ **Cashier's Check** at Seller's expense;
225 ☐ **Funds Electronically Transferred (Wire Transfer)** to an account specified by Seller, at Seller's expense; or ☒ **Closing**
226 **Company's Trust Account Check.**
227   **11.7.**  **Advisory-Tax Withholding.** The Internal Revenue Service and the Colorado Department of Revenue may require closing
228 company to withhold a substantial portion of the proceeds of this Sale when Seller either (1) is a foreign person or (2) will not be a
229 Colorado resident after closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFAST® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 4 of 8
Seller(s) _____

230 exists.
231
232 **12. DEPOSITS.** Brokerage Firm is authorized to accept earnest money deposits received by Broker pursuant to a proposed Sale contract.
233 Brokerage Firm is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the Sale contract.
234
235 **13. INCLUSIONS AND EXCLUSIONS.**
236     **13.1.**     Inclusions. The Purchase Price includes the following items (Inclusions):
237         **13.1.1. Fixtures.** If attached to the Property on the date of this Seller Listing Contract, lighting, heating, plumbing,
238         ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting
239         blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls,
240         built-in vacuum systems (including accessories), garage door openers including **All**_____ remote controls; and
241         **n/a**_____
242         **13.1.2. Personal Property.** If on the Property whether attached or not on the date of this Seller Listing Contract: storm
243         windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods,
244         fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following
245         are included: ☒ **Water Softeners** ☒ **Smoke/Fire Detectors** ☒ **Security Systems** ☒ **Satellite Systems** (including
246         satellite dishes); and
247         **n/a**_____
248         The Personal Property to be conveyed at closing shall be conveyed, by Seller, free and clear of all taxes (except personal
249         property taxes for the year of closing), liens and encumbrances, except
250         **None**

251         Conveyance shall be by bill of sale or other applicable legal instrument.
252         **13.1.3. Trade Fixtures.** The following trade fixtures:
253         **n/a**_____
254         The Trade Fixtures to be conveyed at closing shall be conveyed by Seller, free and clear of all taxes (except personal
255         property taxes for the year of closing), liens and encumbrances, except
256         **n/a**_____
257         Conveyance shall be by bill of sale or other applicable legal instrument.
258         **13.1.4. Parking and Storage Facilities.** ☐ **Use Only** ☒ **Ownership** of the following parking facilities;
259         **n/a**_____
260         and ☐ **Use Only** ☒ **Ownership** of the following storage facilities:
261         **n/a**_____
262         **13.1.5. Water Rights.** The following legally described water rights:
263         **n/a**_____
264         Any water rights shall be conveyed by **n/a**_____ deed or other applicable legal
265         instrument. The Well Permit # is **n/a**_____ .
266         **13.1.6. Growing Crops:** The following growing crops:
267         **None**

268     **13.2.**     Exclusions. The following are excluded (Exclusions):
269     **None**

270
271 **14. TITLE AND ENCUMBRANCES.** Seller represents to Broker that title to the Property is solely in Seller's name. Seller shall deliver
272 to Broker true copies of all relevant title materials, leases, improvement location certificates and surveys in Seller's possession and shall
273 disclose to Broker all easements, liens and other encumbrances, if any, on the Property, of which Seller has knowledge. Seller authorizes
274 the holder of any obligation secured by an encumbrance on the Property to disclose to Broker the amount owing on said encumbrance and
275 the terms thereof. In case of Sale, Seller agrees to convey, by a **Trustee's Deed**_____ deed, only that title Seller has
276 in the Property. Property shall be conveyed free and clear of all taxes, except the general taxes for the year of closing.
277     All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) shall be paid by Seller and released
278 except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows:
279 **n/a**_____
280     The Property is subject to the following leases and tenancies:
281 **None**

282     If the Property has been or will be subject to any governmental liens for special improvements installed at the time of signing a Sale
283 contract, Seller shall be responsible for payment of same, unless otherwise agreed. Brokerage Firm may terminate this Seller Listing
284 Contract upon written notice to Seller that title is not satisfactory to Brokerage Firm.
285
286 **15. EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense, a current commitment and an owner's title insurance

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFAST® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 5 of 8
Seller(s) _____

287 policy in an amount equal to the Purchase Price in the form specified in the Sale contract, or if this box is checked, ☐ **An Abstract of**
288 **Title** certified to a current date.
289
290 **16. ASSOCIATION ASSESSMENTS.** Seller represents that the amount of the regular owners' association assessment is currently
291 payable at $ **TBD**_____ per **TBD**_____ and that there are no unpaid regular or special assessments against the Property
292 except the current regular assessments and except
293 **TBD**

294 Seller agrees to promptly request the owners' association to deliver to buyer before date of closing a current statement of assessments
295 against the Property.
296
297 **17. POSSESSION.** Possession of the Property shall be delivered to buyer as follows:
298 **Upon delivery of deed**

299 subject to leases and tenancies as described in §14.
300
301 **18. MATERIAL DEFECTS, DISCLOSURES AND INSPECTION.**
302     **18.1.**   **Broker's Obligations.** Colorado law requires a broker to disclose to any prospective buyer all adverse material facts
303     actually known by such broker including but not limited to adverse material facts pertaining to the title to the Property and the
304     physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which
305     are required by law to be disclosed. These types of disclosures may include such matters as structural defects, soil conditions,
306     violations of health, zoning or building laws, and nonconforming uses and zoning variances. Seller agrees that any buyer may have the
307     Property and Inclusions inspected and authorizes Broker to disclose any facts actually known by Broker about the Property.
308     **18.2.**   **Seller's Obligations.**
309         **18.2.1. Seller's Property Disclosure Form.** A seller is not required by law to provide a written disclosure of adverse
310         matters regarding the Property. However, disclosure of known material latent (not obvious) defects is required by law.
311         Seller ☒ **Agrees** ☐ **Does Not Agree** to provide a Seller's Property Disclosure form completed to the best of Seller's
312         current, actual knowledge.
313         **18.2.2. Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings
314         for which a building permit was issued prior to January 1, 1978, a completed Lead-Based Paint Disclosure (Sales) form
315         must be signed by Seller the real estate licensees, and given to any potential buyer in a timely manner.
316         **18.2.3. Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater or appliance, a
317         fireplace, or an attached garage and one or more rooms lawfully used for sleeping purposes (Bedroom), Seller understands
318         that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen
319         feet of the entrance to each Bedroom or in a location as required by the applicable building code, prior to offering the
320         Property for sale or lease.
321     **18.3.**   **Right of Broker to Terminate.** Although Broker has no obligation to investigate or inspect the Property, and no duty to
322     verify statements made, Broker shall have the right to terminate this Seller Listing Contract if the physical condition of the
323     Property, Inclusions, any proposed or existing transportation project, road, street or highway, or any other activity, odor or
324     noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants, or if any facts or
325     suspicions regarding circumstances that could psychologically impact or stigmatize the Property are unsatisfactory to
326     Broker.
327
328 **19. FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received shall be divided
329 between Brokerage Firm and Seller, one-half thereof to Brokerage Firm but not to exceed the Brokerage Firm compensation agreed upon
330 herein, and the balance to Seller. Any forfeiture of payment under this section shall not reduce any Brokerage Firm compensation, owed,
331 earned and payable under §7.
332
333 **20. COST OF SERVICES AND REIMBURSEMENT.** Unless otherwise agreed upon in writing, Brokerage Firm shall bear all
334 expenses incurred by Brokerage Firm, if any, to market the Property and to compensate cooperating brokerage firms, if any. Neither
335 Broker nor Brokerage Firm shall obtain or order any other products or services unless Seller agrees in writing to pay for them promptly
336 when due (examples: surveys, radon tests, soil tests, title reports, engineering studies). Unless otherwise agreed, neither Broker nor
337 Brokerage Firm shall be obligated to advance funds for the benefit of Seller in order to complete a closing. Seller shall reimburse
338 Brokerage Firm for payments made by Brokerage Firm for such products or services authorized by Seller.
339
340 **21. DISCLOSURE OF SETTLEMENT COSTS.** Seller acknowledges that cost, quality, and extent of service vary between different
341 settlement service providers (e.g., attorneys, lenders, inspectors and title companies).
342
343 **22. MAINTENANCE OF THE PROPERTY.** Neither Broker nor Brokerage Firm shall be responsible for maintenance of the Property
344 nor shall they be liable for damage of any kind occurring to the Property, unless such damage shall be caused by their negligence or
345 intentional misconduct.
346

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFA$T® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 6 of 8
Seller(s) _____

**23. NONDISCRIMINATION.** The parties agree not to discriminate unlawfully against any prospective buyer because of the race, creed, color, sex, sexual orientation, marital status, familial status, physical or mental disablity, handicap, religion, national origin or ancestry of such person.

**24. RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Seller acknowledges that Broker has advised that this document has important legal consequences and has recommended consultation with legal and tax or other counsel before signing this Seller Listing Contract.

**25. MEDIATION.** If a dispute arises relating to this Seller Listing Contract, prior to or after closing, and is not resolved, the parties shall first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved within 30 calendar days of the date written notice requesting mediation is delivered by one party to the other at the party's last known address.

**26. ATTORNEY FEES.** In the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

**27. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)
All sales are subject to approval of the United States Bankruptcy Court, which takes about 30 days because notice must be sent to creditors. Delivery will be by trustee's deed (essentially a quit-claim deed) rather than by a warranty deed.

**28. ATTACHMENTS.** The following are a part of this Seller Listing Contract:
None

**29. NO OTHER PARTY OR INTENDED BENEFICIARIES.** Nothing in this Seller Listing Contract shall be deemed to inure to the benefit of any person other than Seller, Broker and Brokerage Firm.

**30. NOTICE, DELIVERY AND CHOICE OF LAW.**
   **30.1. Physical Delivery.** All notices must be in writing, except as provided in § 30.2. Any document, including a signed document or notice, delivered to the other party to this Seller Listing Contract, is effective upon physical receipt. Delivery to Seller shall be effective when physically received by Seller, any signator on behalf of Seller, any named individual of Seller or representative of Seller.
   **30.2. Electronic Delivery.** As an alternative to physical delivery, any document, including any signed document or written notice may be delivered in electronic form only by the following indicated methods: ☒ **Facsimile** ☒ **E-mail** ☐ **Internet** ☐ **No Electronic Delivery.** Documents with original signatures shall be provided upon request of any party.
   **30.3. Choice of Law.** This Seller Listing Contract and all disputes arising hereunder shall be governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in this state for property located in Colorado.

**31. MODIFICATION OF THIS LISTING CONTRACT.** No subsequent modification of any of the terms of this Seller Listing Contract shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**32. COUNTERPARTS.** If more than one person is named as a Seller herein, this Seller Listing Contract may be executed by each Seller, separately, and when so executed, such copies taken together with one executed by Broker on behalf of Brokerage Firm shall be deemed to be a full and complete contract between the parties.

**33. ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties, and any prior agreements, whether oral written, have been merged and integrated into this Seller Listing Contract.

**34. COPY OF CONTRACT.** Seller acknowledges receipt of a copy of this Seller Listing Contract signed by Broker, including all attachments.

Brokerage Firm authorizes Broker to execute this Seller Listing Contract on behalf of Brokerage Firm.

PREPARED BY: Kerry Endsley, Broker Associate
LC50-5-09. EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT. Colorado Real Estate Commission
RealFA$T® Software, ©2010, Version 6.17. Software Registered to: R. Scott Webber, Fuller Sotheby's International Realty
12/13/10 17:22:57
Page 7 of 8
Seller(s) _____

Cynthia Skeen, Chapter 7 Trustee for Bankruptcy Estate of James & Elizabeth Gordon, Case # 10-35966 MER
707 Brownell Street , PO Box 218, Georgetown, CO 80444
Bus.#: 303-569-3134   Fax #: 303-569-2383

SELLER'S SIGNATURE _Cynthia Skeen_ DATE 12-14-10
By: Cynthia Skeen

403  Seller's Email Address: Cynthia.Skeen@7trust.net
404
405  Broker's Name: Kerry Endsley
406  Address: 26203 Grand Summit Trail, Evergreen, CO 80439
407  Phone No.: 303-570-0267                    Fax No.: 303-670-0635
408  Email Address: Kerry@kchproperties.net
409

Fuller Sotheby's International Realty
32156 Castle Court
Suite 201
Evergreen, CO 80439

By: _Kerry Endsley_                         12/13/2010
   Signature    Kerry Endsley                Date

410  Email Address: Kerry@kchproperties.net